IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS CAREY, #245 045, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14-CV-590-WKW |
| | ) | [WO] |
| CLASSIFICATION SUPERVISOR | ) | |
| MS. HALE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Plaintiff Carlos Carey files this *pro se* 42 U.S.C. § 1983 action alleging Defendants acted with deliberate indifference to his safety when they failed to protect him from inmate assaults in May and June of 2014 during his incarceration at the Kilby Correctional Facility.[1] Carey requests declaratory relief, access to classification services, and damages. Named as Defendants are Classification Specialist LaShanda Hails,[2] Captain Timothy Logan, Warden Phyllis Billups, and the Director of Classification, Cassandra Conway. Docs. 1, 6.

Defendants filed a special report and supporting evidentiary materials addressing Carey's claims for relief. Doc. 17. In this filing, Defendants deny they acted in violation of Carey's constitutional rights. *Id.* Upon receipt of Defendants' special report, the court issued an order directing Carey to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning him that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for

---

[1] Carey is no longer housed at Kilby, He is currently incarcerated at the Easterling Correctional Facility in Clio, Alabama.

[2] Identified by Carey in the complaint as "Classification Supervisor Ms. Hale." *See* Doc. 1.

summary judgment." Doc. 18 at 2. Carey responded to Defendants' report, *see* Doc. 27, but his response does not demonstrate there is any genuine issue of material fact. *See* Doc. 18 at 2. The court will treat Defendants' report as a motion for summary judgment, and resolve this motion in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Carey to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond

the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Carey's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A.    Absolute Immunity

To the extent Carey sues Defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its

Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.   Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997). In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B.    Deliberate Indifference**

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S.  825, 828 (1994).   "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.   The Eleventh Circuit has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.  *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]"  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware,  . . . and [that] the official does not 'respond[] reasonably to the risk.'"  *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (*en banc*), quoting *Farmer*, 511 U.S. at 844. "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act constitutes deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted); *see also Rich v. Bruce*, 129 F.3d

336, 339-40 (4th Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy).  An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991), *overruled in part on other grounds by Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . .  However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). "The plaintiff has the burden to demonstrate that a defendant was in a position to intervene but failed to do so."  *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Based on the foregoing, to survive summary judgment on his failure to protect claim, Plaintiff must first demonstrate an objectively substantial risk of serious harm existed and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 Fed. App'x 719, 721 (11th Cir. 2014), *citing Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1100 (11th Cir. 2014).  If he establishes these objective elements, Plaintiff must then satisfy the subjective component.  To do so, he "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby,* 135 Fed. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Carey alleges Defendants acted with deliberate indifference to his safety when he was housed in an open-bar segregation cell. Claiming the existence of enemies who had influence over gang members at Kilby, Carey asked that he be moved from the open-bar cell but asserts his requests were ignored. Carey maintains he was not safe in the open-bar cell because not only could enemies, or someone under their influence, throw substances on him but they could also stab him through the bars of the cell. On an unspecified date, Carey claims a segregation runner gave him ice through the bars of his cell then grabbed his hand and threw a hot substance on him which burned his eyes. The runner then stuck Carey with a long, slim metal object. When the metal object bent, Carey asserts the assailant ran away. Three days later, Carey maintains he was assaulted again when a runner stabbed with a pencil through the bars of his cell. Although Carey claims he provided Defendant Hails with proof of enemies, the assault(s), and a copy of his classification summary which lists some of his enemies, he complains Defendant Hails ignored his request to be removed from the open-bar cell and told him "protective custody is for 'white boys.'" Because he feared being attacked, Carey states he would not eat, shower, or exercise. Doc. 1 at 2–3. 2012.

In an amendment Carey alleges that because of his litigation history in the prison system, Defendants refused to accept his request forms and affidavits regarding enemies past and present even after he was injured as a result of his "enemy situations." Carey maintains Defendants instructed administrative officials at Kilby not to document conflicts between him and other enemies "even when 10 inmates or more was threatening to kill [him] in front of" Defendants Hails and Logan and shift officers. When he reported a conflict with an enemy, Carey states correctional officials would announce to the segregation unit that he was a snitch which led to more enemies yelling threats at him day and night and throwing substances on him. Despite providing Defendants with the names of his enemies and correctional officers notifying the administration of Carey's situation, Carey asserts there is no documentation to keep his enemies separate. Doc. No. 6 at 2–3.

Defendants have submitted affidavits, an affidavit from Segregation Commander Lieutenant Franetta Riley, pertinent documents from Carey's prison and medical files, and other relevant prison records and documents. These documents show that Carey arrived at Kilby on April 16, 2014, on transfer from the Bullock Correctional Facility. At the time of his transfer, Carey was assigned to close custody status because of a disciplinary he received at Bullock on September 30, 2013, for spitting on and assaulting a correctional officer. Correctional officials placed Carey on L-Block in a single, open-bar cell in the segregation unit. On May 15, 2014, prison officials moved Carey to a segregation cell in O-dorm. The door to this cell is solid with three openings—a tray slot, a mesh slot, and a plexi-glass slot. On June 9, 2014, prison staff moved Carey to an open-bar cell in segregation on E-Block.  Doc. 17-1 at 1–2.

According to Lt. Riley, Carey never reported being assaulted, threatened, or in fear for his life while housed on the segregation unit nor did he request placement on protective custody. Daily,

correctional staff asked Carey about showering, exercising, and taking meals. Lt. Riley affirms that inmates on segregation may submit requests to her or correctional staff under her supervision and such requests are accepted and documented.  Doc. 17-5, Doc. 17-7 at 1–13.

Defendants Hails, Logan, and Billups deny Carey ever notified them that he feared for his safety at Kilby. According to Defendant Hails, Carey did not: 1) report that he had been stabbed in his cell; 2) provide any documentation about any such incident; 3) provide her with the names of enemies he had at Kilby; or 4) identify any correctional officers who knew of an enemy situation. Defendant Hails denies Carey's allegation that she witnessed an incident where ten or more inmates were threatening him. Defendant Hails further states Carey never asked her to remove him from an open-bar cell nor did she ever tell him, either verbally or in writing, that protective custody was for white boys. Additionally, as a classification specialist supervisor, Defendant Hails states she is not authorized to make cell assignments for segregation inmates. Doc. 17-1.

Defendant Billups states she never refused to accept request forms or affidavits from Carey concerning past or present enemies nor did she ever receive any request slips, affidavits, or other information from him regarding enemies at Kilby. She denies being aware of Carey having enemies at Kilby during the relevant time period and affirms he did not report any threats, injuries, or stabbings by other inmates to her or other prison staff at Kilby. Finally, Defendant Billups denies instructing anyone to not document or report incidents involving an enemy situation between Carey and other inmates.  Doc. 17-2.

Defendant Logan states he received a complaint from Carey indicating he had shaving powder thrown in his face, but Carey did not provide Defendant Logan with the name of the person responsible. While the evidence reflects Carey submitted a sick call request on June 12, 2014,

requesting medical attention for his eyes due to blurred vision and itching which he indicated was the result of having a warm liquid with shaving powder thrown in his face through the bars of his cell the night before,[3] Defendant Logan affirms no institutional incident reports involving Carey were generated during the relevant time period nor did Carey have any validated enemies at Kilby. Defendant Logan maintains he never instructed correctional personnel to ignore Carey's requests regarding safety, security, or health issues while he was assigned to Kilby, and states that at no time did he hear or see inmates verbally or physical threatening Carey nor did he hear any correctional officer tell inmates in segregation that Carey was a snitch. Doc. 17-3; Doc. 17-6 at 5–23.

The evidentiary materials submitted by Defendants refute Carey's allegations they acted with deliberate indifference to his safety. Carey maintains he provided Defendants with the names of enemies and names of correctional officers who were aware of the situation but contends "there is no record of these enemies and no documentation to keep us separate setting the stage for future violence." Doc. 6 at 3. Additionally, Carey claims he has witnesses who will testify that: 1) he was injured by enemies before and after he reported the enemy situation; 2) they saw Carey give Defendants Logan and Hails and Lt. Riley paperwork with the names of enemies; and 3) they heard Carey tell Defendants his life was in danger. Doc. 27 at 1. Carey has not, however, supported his opposition with witness affidavits nor has he identified any inmate at Kilby who he claims is an enemy. The pleadings and documents in this matter are devoid of evidence that Plaintiff at any time identified any inmate at Kilby as an enemy or that any defendant or other prison personnel knew of an enemy situation regarding Carey and other inmates at Kilby. The record is also devoid

---

[3] Carey's medical records reflect that medical personnel noted no abnormal objective symptoms. Medical staff advised Carey to notify them if his symptoms worsened and prescribed him neomycin ointment to be applied to his eyes four times a day for seven days. Doc. 17-8 at 7–10.

of evidence that Plaintiff informed any defendant or other correctional staff that he feared a risk of attack from another inmate.[4]

Carey fails to present evidence which would be admissible at trial showing "an objectively substantial serious risk of harm" posed by unidentified inmates prior to the incidents at issue as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028-1029; *Carter*, 352 F.3d at 1350 (Deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature."). There is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by any inmate at Kilby to Carey as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028. Even if Carey had satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by any inmate. Carey presents no facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial harm. *McBride v. Rivers*, 170 Fed. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff

---

[4] The court takes judicial notice of another complaint filed by Carey in which he also challenged actions which occurred at Kilby from June through September of 2014, including a claim that prison officials failed to protect him from enemies at Kilby. *See* Recommendation of the Magistrate Judge, *Carey v. Billups,* Civil Action No. 2:14-CV-888-MHT (M.D. Ala., May 31, 2017). In that case, the court noted:

> Medical records reflected that upon [Carey's] transfer to Kilby in April of 2014, mental health personnel diagnosed [him] with provisional PTSD, observed the possible presence of an adjustment or mood disorder and noted the potential that Carey suffered from either delusional or factitious disorder, the latter of which causes an individual to fabricate, feign or exaggerate circumstances related to harm he has suffered. Throughout his incarceration at Kilby, Carey repeatedly refused medication for treatment of his mental health issues. During subsequent routine evaluations, mental health personnel determined that incarceration constituted a situational stressor for Carey and noted he presented "paranoid thoughts (enemies in seg threatening him)" such that therapy should continue so that Carey can "be free of paranoid thoughts and realize no one wants to harm him in seg."

*Id.* ECF No. 44 at 26 (citations to court record omitted).

"failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Johnson*, 568 Fed. App'x at 722 (affirming dismissal for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury" posed by an inmate attacker); *Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005) (holding that where allegations simply inferred that prison officials should have known that inmate attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate-attacker]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his inmate-attacker] nor of any fear [he] felt"); *Murphy v. Turpin*, 159 Fed. App'x 945, 948 (11th Cir. 2005) ("[B]ecause [plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure-to-protect] claim fails."). Because Carey has failed to show that Defendants actually knew a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well, and summary judgment is due to be granted in Defendants' favor on Carey's failure-to-protect claim.

## C.    Retaliation

Carey alleges he has been "cut off from administrative and constitutional processes state and federal by the administration at Kilby. The staff/administration at Kilby is not adhering to A.D.O.C. classification manual at it pertains to handling enemy situations and potential enemy situations . . . Plaintiff is being denied due process and is being discriminated against due to past litigation." Doc. 6 at 3. The court understands Carey to complain that Defendants failed to

investigate and document his concerns regarding enemy situations at Kilby—past, present, and potential—in retaliation for his litigation history while in the custody of the ADOC. Doc. 6 at 3–4.  Defendants deny taking any retaliatory action against Carey due to his legal activities and state they have no knowledge of his litigation history. Defendants further affirm that at no time did Carey ever provide them with: 1) names of enemies; 2) information regarding an enemy situation; or 3) reports or documentation that he had been stabbed, threatened, assaulted, or feared for his safety. The undisputed evidence reflects that during the relevant time period, Carey had eight documented enemies on file but none of them were housed at Kilby. Had Carey communicated to Defendants the incidents alleged in the complaint and amendment thereto, Defendants maintain such reports would have been investigated and documented and any enemy situation would have been documented as either valid or invalid. Docs. 17-1, 17-2, 17-3, 17-4, 17-5, 17-6.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quotation marks and citation omitted); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).  "In the First Amendment context, . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate

penological objectives of the corrections system.'"  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), quoting *Pell*, 417 U.S. at 822.

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech.  *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)]. . . .  The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech."  *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  "In prison, of course, first amendment rights are not absolute. Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights."  *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986) (*citing Pell*, 417 U.S. at 821).  "A prisoner retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system. . . . [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and . . . disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest."  *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002) (internal citations and quotations omitted); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to maintain security and discipline as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging the constitutionality of actions of correctional personnel.  *Woods*, 60 F.3d at 1166.  "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. This is [necessary because prisoners'] . . .  claims of retaliation are . . . easily fabricated [and] pose

a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (internal citation omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To proceed on a claim of retaliation and withstand the entry of summary judgment, an "inmate must establish . . . these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a motivating factor" behind the challenged action of the defendants. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (internal quotation marks omitted). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation.

*Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287.  "Under the *Mt. Healthy* approach, if the government official can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable."  *Smith*, 532 F.3d at 1278 n.22 (internal citation and quotation marks omitted).

Carey claims that because of his institutional litigation history, Defendants failed to investigate or document "the enemies in this evolving situation even when [he] provided them with names of enemies" in violation of ADOC regulations, thus satisfying the first element of his retaliation claim. Doc. 6 at 3.   *Smith*, 532 F.3d at 1277.  The second element requires Carey to demonstrate that the failure to investigate or document inmate enemies "would likely deter a [prisoner] of ordinary firmness" from voicing complaints and filing legal actions challenging the behavior of correctional officers.  *Id*.  This "presents an objective standard and a factual inquiry." *Id*.  There is nothing before this court which indicates that the challenged action would deter an ordinary inmate from complaining or filing lawsuits and, in the experience of this court, the opposite is true.  For instance, the records of this court establish that Carey was not in any way deterred in either of these pursuits.  Even assuming that this standard has been met, Carey fails to satisfy the third requisite element of a retaliation claim—a causal connection between his constitutionally protected activities and the alleged adverse actions of Defendants.  The causal connection inquiry focuses on the "subjective motivation of the defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were subjectively

motivated to" not investigate or document Carey's claims regarding enemies at Kilby because of his lawsuits. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mt. Healthy*. This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, *referencing Mt. Healthy* motive analysis.

As explained, Defendants deny the allegation of retaliation made by Carey and maintain they had no reason to conduct an investigation or prepare documentation regarding an enemy situation involving Carey because he never reported any incidents involving him and other inmates to them or other prison staff nor did he report being fearful of or threatened by other inmates. Carey never identified inmates at Kilby he claimed were enemies nor did he identify correctional officers he claimed had knowledge of his purported enemy situation. Carey offers only his conclusory allegation of ultimate fact that Defendants retaliated against him because of his conduct in filing lawsuits. This allegation is insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.

On this record, the court finds no admissible or potentially admissible evidence, direct or otherwise, from which a reasonable fact finder could infer the requisite motivating factor as to the alleged act of retaliation. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (holding that "where the defendant-official has made a properly supported motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent

motive."); *Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (finding where plaintiff offered no evidence to rebut defendant's evidence, plaintiff failed to establish a causal relationship between his complaints and the alleged retaliation). Additionally, the circumstances, when taken as a whole, do not support making such an inference. Carey's retaliation claim, therefore, falters on this element. Moreover, assuming *arguendo*, that a finder of fact could reasonably infer the motivating factor, it is clear under *Mt. Healthy* that Defendants, despite the lawsuits, had no basis for conducting investigations or creating records regarding an enemy situation involving Carey because there is simply no evidence they had any valid reason on which to believe such action was necessary. *Turner*, 482 U.S. 91-92. In light of the foregoing, Defendants are entitled to summary judgment on Carey's retaliation claim.

### D.     Violation of Agency Regulations

Plaintiff alleges that Defendants failed to adhere to agency classification regulations regarding procedures for handling enemy situations and potential enemy situations. Doc. 6 at 3. As previously determined, Defendants did not act with deliberate indifference to Plaintiff's safety regarding the incidents about which he complains. Infringements of agency rules, regulations or procedures do not, standing alone, amount to constitutional violations. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) (recognizing that allegations of a violation of statutory or administrative provisions did not provide the basis for a claim of violation of a constitutional right); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (mere violations of agency regulations do not

raise constitutional questions); *Weatherholt v. Bradley*, 316 Fed. App'x 300, 303 (4th Cir. 2009) (same); s*ee also Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation).   Because this claim provides Plaintiff no basis for relief, Defendants are entitled to summary judgment.

## E.   Lack of Investigations

Carey complains Defendants denied him due process by failing to investigate and document his enemies in the "evolving situation" even when he provided them with the names of enemies and the names of officers on duty who were aware of the situation. As explained, Defendants did not act with deliberate indifference to Plaintiff's safety and well-being.   A correctional official's failure to conduct an investigation, standing alone, fails to state a cognizable claim for relief.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).   "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F.Supp.3d 394, 414 (N.D. N.Y. 2014); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) (recognizing that inmates have no due process right to an investigation); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 342 (S.D. N.Y. 2003) (finding that prisoners do not have a due process right to an investigation of grievances).   Based on the

foregoing, the court concludes that Defendants' alleged failure to conduct investigations does not rise to the level of a constitutional violation and, therefore, provides Carey no basis for relief.

## F.    Equal Protection

Carey alleges Defendants denied him equal protection by not complying with classification regulations regarding enemy situations because of his institutional litigation history. Doc. 6 at 3. The court has determined Defendants did not act with deliberate indifference to Carey's safety and nor did they retaliate against him for filing lawsuits. Carey's discrimination claim, without more, entitles him to no relief.

To establish a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006) (*citing Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) and *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).  "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .  [An allegation] of ... discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

"'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and

citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Where Plaintiff challenges actions of a correctional official, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause.  *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment are insufficient to establish discrimination).

Here, Carey has generally alleged discrimination but identifies no specific facts which allow the court to make any plausible inference that any treatment he allegedly received from Defendants was based on a constitutionally impermissible reason.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Because Carey's discrimination claim is purely conclusory in nature and unsupported by specific factual allegations, Defendants are entitled to summary judgment on this claim.  *See Smith v. Regional Director of Florida Dept. of Corrections*, 368 Fed. App'x. 9, 12-13 (11th Cir.  2010); *Iqbal*, 556 U.S. at 678.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (Doc. 17) be GRANTED;

2.  Judgment be ENTERED in favor of Defendants;

3.  This case be DISMISSED with prejudice;

4.   Costs be taxed against Plaintiff.

It is further

ORDERED that **on or before June 30, 2017**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done, this 16th day of June 2017.


/s/    Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE